## THE McALLISTER NO. 12.

### McALLISTER LIGHTERAGE LINE, Inc., v. PENNSYLVANIA R. CO.

### THE MARY E. MESECK.

### No. 17456.

District Court, E. D. New York.

June 24, 1946.

Gerard M. McAllister, of New York City, for libellant.

Burlingham, Veeder, Clark & Hupper, of New York City (James J. Conran, of New York City, of counsel), for respondent.

Kirlin, Campbell, Hickox & Keating, of New York City (John F. Gerity, of New York City, of counsel), for the Mary E. Meseck.

GALSTON, District Judge.

On June 6, 1944, the scow McAllister No. 2 was chartered by the Pennsylvania Railroad Co., for an indefinite period, at an agreed per diem rate of charter hire. The scow was delivered to the respondent on that day. Seaworthiness of the scow as at that time was stipulated by all the parties.

The scow remained in the continuous and exclusive possession and control of the Pennsylvania Railroad Co. from June 2, 1944, to February 21, 1945, when the scow was returned to the libellant. It was not then in the same condition as when delivered to the respondent. Ordinary wear and tear did not account for the damaged condition in which the vessel was found on the day of re-delivery. The libellant seeks to be compensated for the amount of its damage.

The Pennsylvania Railroad Company in its answer alleges that the scow, on October 24, 1944, while in its possession and control, was moored at Pier 60, North River, and that the tug Mary E. Meseck, with the covered barge Lackawanna No. 311 in tow, came into the slip to shift the McAllister No. 12 to Pier 68, North River. It is charged that in the course of her maneuvers the Meseck negligently brought the corner of the No. 311 into collision with the starboard side of McAllister No. 12. The Pennsylvania Railroad Company accordingly filed its petition to implead the tug Meseck. The answer of the claimant, as owner of the Meseck, among other matters alleges that on October 24, 1945, the McAllister No. 12 was in a bad state of repair, and denies any negligence on the part of the tug.

The issue is a narrow one of fact, the solution of which must be found in the credibility of the witnesses and the probabilities of truth resulting therefrom. The libellant and the respondent had but one witness, the captain or bargee of the McAllister No. 12. Of all the witnesses in the case, he was the most convincing, and I accept his version of the events of that morning. His barge was moored outside the St. John lighter on the north side of Pier 60, and heading towards the river, and while in his cabin he heard a crash against the side of his boat which threw the china from his eating table. He went out on deck, saw the Meseck and her tow and im-

mediately investigated the condition of the boat in the hold. He found evidence of fresh damage in one or more knees and planks on the starboard side.

All the claimant's witnesses deny that there was a collision, and describe the starboard bow corner of the McAllister No. 12 as in bad condition. None of the claimants came on board the McAllister No. 12 to look for damage, though it is asserted by the McAllister bargee that he notified those on the No. 311 that his barge had been damaged. They all deny that there was any such complaint made.

Despite the fact that the claimant's witnesses outnumber the bargee, the consistency of his story, his appearance on the witness stand and his intelligence convinced me that his was the version to accept. This was the more so because of an important conflict in the testimony of the captain of the Meseck with that of others of the claimant's witnesses in respect to the presence on the morning of the accident of other vessels in the slip, and more particularly on the north side of Pier 60, between the McAllister No. 12 and the Lackawanna No. 311. The latter, before she was picked up by the Meseck, lay about two hundred feet westerly of the McAllister No. 12 on the north side of the pier. The captain of the tug admitted that there was a vessel or more between the two scows in question. Since that is the fact which I find, it is then easy to understand that the tug Meseck with her tow, in maneuvering past the intervening barge or barges, did come in contact with the starboard side of the McAllister No. 12. The more so is this likely because the No. 311 was a covered barge and to some extent prevented the captain of the Meseck, who was in the pilot house, from looking around the end or stern of the No. 311.

The libellant is entitled to a decree for the damage thus sustained against both the respondent and the claimant, with primary liability, however, as against the claimant, and secondary liability as against the respondent.

With the filing of this opinion appropriate findings of fact and conclusions of law will also be filed.